UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| SHELLEY L. GIBBENY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CAUSE NO.: 1:17-CV-218-TLS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER OF THE | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Shelley L. Gibbeny seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability and disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied her Social Security Disability benefits and erred by failing to give controlling weight to the Plaintiff's treating psychologist's opinion and failing to find her kleptomania disabling.

**BACKGROUND**

On May 24, 2013, the Plaintiff filed her third Title II application for a period of disability and disability insurance benefits, alleging disability beginning on March 1, 2009. (R. 36.) Her claim was denied initially on August 29, 2013, and upon reconsideration on November 20, 2013. (*Id.*) On May 12, 2015, the Plaintiff appeared via phone with counsel and testified at a hearing before an administrative law judge. (*Id.*) On August 24, 2015, the ALJ denied the Plaintiff's application. (R. 47.) Sharon D. Ringenberg, an impartial vocational expert, also appeared at the hearing. (R. 36.) On March 16, 2017, the ALJ's decision became the final decision of the

Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 1–4.) On May 15, 2017, the Plaintiff filed this claim in federal court against the Acting Commissioner of the Social Security Administration.

**THE ALJ'S FINDINGS**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has not engaged in SGA since her alleged onset date, March 1, 2009, and that the Plaintiff's date last insured was September 30, 2012. (R. 36, 38.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under § 404.1520(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including affective disorder, anxiety disorder, and personality disorder in addition to a combination of physical impairments, none of which the ALJ found to be individually severe, but which the ALJ found were severe in combination. (R.

38.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1 and that she had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) except that:

> She is limited to no work with the general public and only brief and superficial interactions with co-workers and supervisors in a relatively unchanging work setting and process with no requirement for fast paced work.

(R. 43.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled as of her alleged onset date. The ALJ evaluated the objective medical evidence and the Plaintiff's subjective complaints and found that the Plaintiff's medically determinable impairments "could reasonably be expected to cause some of the alleged symptoms." (R. 45.) But, the ALJ found that

the Plaintiff's testimony and prior statements regarding the intensity, persistence, and limiting effects of these symptoms "were not entirely credible." (*Id.*)

As to the Plaintiff's mental impairments, the ALJ considered the opinions of various medical professionals. State Agency psychological consultants found that the Plaintiff's affective disorder, anxiety disorder, and personality disorder were severe, but found only a mild deficit in adaptive functioning, which the ALJ acknowledged was contradictory. (R. 41.) The State Agency consultants did not discuss the Plaintiff's diagnoses of kleptomania and substance abuse. The ALJ also considered treatment records from Dr. James Cates, who initially treated the claimant in the 1990s but did not resume treatment until September 2009. (*Id.*) The ALJ found that the evidence prior to the Plaintiff's date last insured "reasonably support[ed] severe conditions resulting in moderate limitations in her ability to sustain social functioning and her ability to maintain concentration, persistence or pace." (*Id.*)

The Plaintiff has past relevant work as a cook, which the ALJ found that the Plaintiff could perform because she did so during the relevant time period. (R. 45.) Relying on the VE's testimony, the ALJ found in the alternative that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 46.) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act as of her alleged onset date. (R. 47.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The

Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [her] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff argues that the ALJ erred by failing to give controlling weight to her treating psychologist's opinion and by failing to properly account for her kleptomania.

Generally, controlling weight is given to the treating physician's opinion only if it is well-supported by medically acceptable, objective evidence and consistent with other substantial evidence of record. 20 C.F.R. § 404.1527(d)(2). When the treating physician's opinion is not entitled to controlling weight—such as where it is not supported by the objective medical evidence, is inconsistent with other substantial evidence in the record, or is internally inconsistent, see *Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)), the ALJ should proceed with assessing the value of the opinion in the same way he would any other medical evidence. *See id.* Assessing the weight to afford the opinion depends on a number of factors, such as the length, nature, and extent of the physician and claimant's treatment relationship, 20 C.F.R. § 404.1527(c)(2)(i)–(ii), whether the physician supported his or her opinions with sufficient explanations, *id.* § 404.1527(c)(3), and whether the physician specializes in the medical conditions at issue, *id.* § 404.1527(c)(5). If the ALJ discounts the physician's opinion after considering these factors, that decision stands so long as the ALJ "minimally articulate[d]" her reasons. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (quoting *Rice v. Barnhart*, 384 F.3d 363, 372 (7th Cir. 2004)).

It is not the reviewing Court's job to determine whether the treating physician's opinion should have been given controlling weight. *See Clifford*, 227 F.3d at 869 ("[W]e review the entire record, but do not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner."). However, an ALJ must give "good reasons" for the weight afforded to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). "The ALJ must give substantial weight to the medical evidence and opinions submitted, unless specific, legitimate reasons constituting good cause are shown for rejecting it." *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (first citing 20 C.F.R. §§ 404.1527(c)–(d); then citing *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994); and then citing *Edwards v. Sullivan*, 985 F.2d 334, 337 (7th Cir. 1993)). A court on review must uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010).

The ALJ looked in part to Dr. Cates' treatment records when evaluating the Plaintiff's impairments. The Plaintiff, however, argues that the ALJ failed to give Dr. Cates' opinion any weight, much less the controlling weight to which it was entitled. The Plaintiff points to certain portions of the treatment records that contain notes regarding "Functional Impairments." (*See, e.g.*, R. 366, 370–71.) For example, treatment records from September 13, 2012 indicate:

> Shelley struggles with the loss of her substances as a way of managing her life. In addition, her Borderline Personality traits, while softening, are still problematic for her. For example, she already left one group home due to conflicts with one of the women there.

(R. 366.) The Plaintiff argues that an entry from December 6, 2012, is also an "explicit reference to [the relevant] time period" and therefore opines on her limitations prior to her date last insured:

> On her own, unsupervised, and trying to make it through the rest of her probation. While I would like to believe she can succeed this time, Shelley has never been able to do so in the recent past. Significant concern that if she has not already returned to marijuana/synthetic marijuana use on a regular basis she will soon do so.

(R. 370.) According to the Plaintiff, "[s]uch statements . . . amount to an opinion that Gibbeny has not been able to succeed on probation during the relevant time period because her borderline personality behaviors such as confused thinking limit her functioning severely, even markedly." (*See* Pl. Br. 7, ECF No. 18.)

However, these statements in the Plaintiff's treatment records are not "medical opinions" as defined by the regulations. Medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Although the statements refer to the Plaintiff's diagnoses and symptoms, nowhere does Dr. Cates opine as to what the Plaintiff could do despite her impairments or what physical or mental restrictions she would have in performing a job. A statement that a person is struggling with sobriety or that her disorder is proving problematic as it relates to her conditions of probation does not amount to an opinion that those impairments cause work-related limitations. "[M]erely establishing a diagnosis is insufficient to render a condition severe" and the Plaintiff "bears the further burden of presenting evidence establishing how this significantly limits her ability to do basic work activities." *Gannett v. Colvin*, No. 3:13-CV-717, 2014 WL 7345694, at *4 (N.D.N.Y. Dec. 23, 2014) (internal citations omitted) (finding kleptomania not a severe impairment absent evidence establishing significant limitations). Further, even if the Court were to construe Dr. Cates' assessment as being a retrospective opinion, "[a] retrospective diagnosis may be considered only if it is corroborated by evidence contemporaneous with the eligibility period." *Estok v. Apfel*, 152 F.3d 636, 640 (7th

8

Cir. 1998). The Plaintiff has not produced contemporaneous evidence that would show that the Plaintiff's condition was disabling. Therefore, there was no "opinion" by Dr. Cates that was entitled to controlling weight absent an explanation by the ALJ for declining to give it controlling weight.

The Plaintiff also takes issue with the ALJ's analysis, or lack thereof, of her kleptomania. She argues that "[t]he ALJ opinion paints Gibbeny as some sort of mastermind criminal who does not have an ongoing kleptomania problem that interferes with work, despite the extensive record showing that she does." (*See* Pl. Br. 7–8.) She argues that the ALJ ignored the portions of her treatment records demonstrating the limiting nature of her kleptomania and instead impermissibly played doctor, coming to the opposite conclusion of Dr. Cates. The Commissioner argues that the ALJ properly considered the pertinent evidence and that her conclusion that kleptomania did not impair the Plaintiff's ability to work during the relevant time period was consistent both with Dr. Cates' statement that the Plaintiff was in remission as well as the Plaintiff's testimony indicating that her kleptomania had not actually interfered with her jobs during the relevant time period.

The Plaintiff points to a statement Dr. Cates wrote referencing her treatment for kleptomania in the early 1990s and self-reports of "ongoing and uncontrollable" shoplifting in 2013 and 2014. However, these treatment records concern either time periods long prior to the Plaintiff's alleged onset date (March 1, 2009), or after her date last insured (September 30, 2012). Dr. Cates' records actually support the ALJ's conclusion because they indicate that the Plaintiff's kleptomania was in remission during the relevant time period. *See Green v. Colvin*, 605 F. App'x 553, 558 (7th Cir. 2015) (finding insufficient evidence of disability prior to the date last insured when records indicated cancer was in remission before being re-diagnosed);

9

*Bonebrake v. Colvin*, No. 14-3023, 2015 WL 4778253, at *5 (C.D. Ill. Aug. 13, 2015) (noting that condition did not come out of remission until after date last insured, which suggested that the plaintiff's symptoms did not become severe until after date last insured); *Hilkert v. Astrue*, No. 12-CV-55, 2013 WL 149347, at *5 (E.D. Wis. Jan. 14, 2013) (noting that the evidence contemporaneous with the alleged period of disability showed that the claimant's condition was generally in remission). Moreover, any argument that the records show a worsening of the Plaintiff's condition, indicating that she is disabled, must fail because she must prove that her conditions were disabling prior to her date last insured. *See Scholesser v. Berryhill*, 870 F.3d 712, 718 (7th Cir. 2017); *Milliken v. Astrue*, 397 F. App'x 218, 225 (7th Cir. 2010) ("We recognize that the fact that [the plaintiff's] condition may have worsened . . . does not compel the finding that she was not disabled prior to her date last insured . . . . Nonetheless, it is [the plaintiff's] burden to produce medical evidence to support her claim of disability prior to her date last insured.") (internal citations omitted). Finally, the Plaintiff's own testimony does not support a finding that her kleptomania was disabling prior to her date last insured. Both the ALJ and the Plaintiff's attorney questioned her regarding her difficulties working and reasons for her termination at various jobs during the relevant time period. At no time did the Plaintiff indicate that she had problems with stealing from any of her employers, much less that she was terminated for such reason. *See Gannett*, 2014 WL 7345694, at *4 (noting there was "no evidence recounting a history of job terminations stemming from [the plaintiff's] kleptomania"). Rather, she indicated other reasons for her terminations. Therefore, the Court cannot say that the ALJ's conclusions regarding the Plaintiff's kleptomania are not supported by substantial evidence.

## CONCLUSION

Accordingly, Court AFFIRMS the ALJ's finding that the Plaintiff was not disabled as of her date last insured.

SO ORDERED on April 17, 2018.

     s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT